Alden M. WORCESTER, Jr., et al.

v.

Allison J. BRIGGS, et al.

Supreme Judicial Court of Maine.

Argued Jan. 9, 1986.

Decided Feb. 6, 1986.

Rudman & Winchell, John W. McCarthy (orally), George F. Terry, IV, Bangor, for plaintiffs.

Linscott, Badger & Slater, William K. McKinley (orally), Willard H. Linscott, Bangor, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

The defendants, Allison J. Briggs, R. Murray Briggs and Richard W. Briggs, appeal from a judgment of the Superior Court (Penobscot County) entered in favor of the plaintiffs, Alden M. Worcester, Jr., Eugene A. Worcester and Robert L. Worcester. The sole issue on appeal is whether the trial justice erred in concluding that the defendants were prevented from recovering under the Maine Securities Act. 32 M.R.S.A. § 881(1)(B), *repealed and replaced by* P.L. 1985, ch. 400, § 2 (codified at 32 M.R.S.A. §§ 10201(2), 10605(1) (Supp. 1985)).[1] Finding no error, we affirm the judgment.

On March 12, 1982, the defendants purchased from the plaintiffs all of the shares of stock of Al Worcester & Sons, Inc., a Datsun automobile franchisee located in Bangor. Prior to the sale, the parties engaged in a period of negotiation. On March 3, 1982, several of the parties gathered at the offices of the corporate counsel of Al Worcester & Sons, Inc., who demonstrated to the defendants the expected profits they could generate by purchasing the company, selling the building in which it was located, and relocating and combining the Datsun sales operations with that

---

1. Chapter 400 of the 1985 Public Laws repealed the "Maine Securities Act" and replaced that Act with the "Revised Maine Securities Act." The revised Act is codified at 32 M.R.S.A. §§ 10101–10710 (Supp.1985).

of Sullivan Ford Sales, an automobile dealership owned and operated by the defendants in Bangor. Included among the figures displayed by the plaintiffs' counsel on a chalk board was $70,000, which represented the net income of Al Worcester & Sons, Inc. for some prior unspecified period of time. After some discussion, a written agreement entitled "Agreement to Purchase Stock of Al Worcester & Sons, Inc.," was signed by Alden and Robert Worcester and Richard Briggs. Murray Briggs's signature was affixed to the agreement by power of attorney. The defendants paid $5,000 as an earnest money deposit, which was placed in their attorney's trust account.

Following the execution of the agreement, the defendants examined the records of Al Worcester and Sons, Inc., including numerous monthly income statements prepared by the plaintiffs for the Nissan Motor Corporation. One of these monthly statements for June, 1981, showed a net profit of $70,920, for the July 1, 1980 to June 30, 1981 fiscal year. Sometime prior to the execution of a second agreement similarly entitled "Agreement to Purchase Stock of Al Worcester & Sons, Inc.," however, the defendants learned that the $70,000 net profit figure was inaccurate. They discovered that a financial and operating report for the July 1, 1980 to June 30, 1981 fiscal year, prepared by an accounting firm, showed a net loss of $37,497. As a result of examining this report, the defendants, in order to protect themselves against

an overvaluation of the inventory or an undervaluation of the accounts payable, made several changes in the second agreement. This agreement was signed by all the parties on March 10, 1982. Two days later, on March 12, 1982, the parties completed the transaction. The defendants delivered to the plaintiffs two promissory notes, one for $400,000, the other for $46,000, both with 10% interest payable in equal monthly installments over fifteen years.

After payments on the notes ceased in December, 1982, the plaintiffs commenced this action. The defendants raised several affirmative defenses and counterclaims including a claim that the plaintiffs violated the Maine Securities Act. After a jury-waived trial, the court concluded that the notes were in default and that no defenses existed to excuse non-payment. The court found that the defendants were prevented from recovering under the Securities Act because although the income figures provided at the initial negotiations were inaccurate, "the actual numbers were submitted to the Defendants prior to closing." This appeal followed.[2]

In order to recover under section 881(1)(B) of the Securities Act, the buyer of a security must have purchased the security "not knowing of the untruth or omission" of any untrue statement made by the seller or omission to state a material fact that causes the statements made by the

---

**2.** The notice of appeal was filed on May 29, 1985. Judgment was entered on March 12, 1985. Rule 73(a) of the Maine Rules of Civil Procedure requires that an appeal be taken within thirty days from the entry of judgment except in limited circumstances that are inapplicable here. At oral argument, the defendants asserted that their appeal was timely because they had filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on April 2, 1985. Title 11 U.S.C. § 108(b) (Supp. 1985) allows a notice of appeal to be filed within sixty days after the order for relief provided that a petition for bankruptcy is filed prior to the expiration of the time period within which the debtor may file a notice of appeal. *See also* 11 U.S.C. § 1107(a) (Supp.1985); *In re Martin-*

*son*, 731 F.2d 543, 544 n. 2 (8th Cir.1984). We note that the defendants orally suggested bankruptcy in Superior Court and after filing a notice of appeal, informed the clerk of the Law Court that a bankruptcy petition had been filed. Following oral argument, the defendants submitted certified copies of bankruptcy petitions, dated April 2, 1985, with orders for relief noted thereon, thus demonstrating that the appeal was seasonably filed. We take this opportunity to remind the bar that the record must demonstrate compliance with all requirements for perfecting an appeal. Absent data establishing the timeliness of an appeal, this Court is unable to determine the threshold question of jurisdiction. *Cf. Rice v. Amerling,* 433 A.2d 388, 390 (Me. 1981).

seller to be misleading.[3] The record is clear that the defendants had knowledge of the misstatement regarding the income figure prior to the closing of the transaction. Nevertheless, the defendants argue that because the plaintiffs never provided a full explanation to them regarding the discrepancies between the two income figures, they should not be prevented from recovering under the Act.[4] To read the statute as the defendants suggest is to give no effect to the requirement that in order for a purchaser of a security to recover damages based on a seller's inaccurate statement of a material fact, the buyer must be unaware of the inaccuracy. It cannot be disputed that prior to the sale of the security, the defendants knew that the originally reported $70,000 net income figure was inaccurate because they knew that the financial and operating report revealed that the business had operated in fact at a loss of $37,-497. No claim is made that the $37,497 figure was inaccurate. Nevertheless, despite their knowledge of the inaccuracy, they proceeded with the transaction. In these circumstances, the statute does not provide a remedy. Accordingly, because the court's conclusion was correct, albeit for the wrong reason, the judgment must be affirmed.[5] *See L. Ray Packing Co. v.*

*Commercial Union Ins. Co.,* 469 A.2d 832, 834 (Me.1983).

The entry is:

Judgment affirmed.

All concurring.

**3.** Section 881(1)(B) of the Act provided:
　**1. Liabilities.** Any person who
　**B.** Offers or sells a security, whether or not exempt or in an exempt transaction, by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, *the buyer not knowing of the untruth or omission,* and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue to recover the consideration paid for the security, together with interest at 6% per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less

the value of the security when the buyer disposed of it and interest at 6% per year from the date of disposition.
(emphasis added).

**4.** At trial, Al Worcester explained that the discrepancies occurred because a bookkeeper had died and three or four months elapsed before a new bookkeeper was employed.

**5.** The trial court based its conclusion on the fact that the actual income figures were *submitted* to the defendants prior to the closing and that the income figures were not material to the transaction. The fact that a seller submitted information to the buyer, that if read would disclose the inaccuracy, is irrelevant because the Act requires that a buyer *know* of the untrue statement. Here, the defendants concede that they knew of the inaccuracy regarding the income figure prior to the sale of the stock. It is therefore unnecessary to determine whether the inaccurate information was material.